Michael J. Aguirre, Esq., SBN 60402
Maria C. Severson, Esq., SBN 173967
**AGUIRRE & SEVERSON, LLP**
501 West Broadway, Suite 1050
San Diego, CA 92101
Telephone: (619) 876-5364
Facsimile: (619) 876-5368

Patrick DeBlase (SBN 167138)
Eric Brown (SBN 229622)
Michael C. Eyerly (SBN 178693)
**DEBLASE BROWN EYERLY LLP**
680 South Santa Fe Avenue
Los Angeles, California 90021
Telephone: (310) 575-9955
Facsimile: (310) 575-9919
deblase@dbelegal.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA M. CONNER, an individual; MYCHAL EDELMAN, an individual; BRYAN EDELMAN, an individual; JIM PARK, an individual; ANTHONY KUMAR, an individual; MUKUSH GOPALAKRISHNAN, an individual; DARSHINI NAGA, an individual; THOMAS WAGGONER, an individual; AJANI HUNT, an individual; DIANA ORDONEZ, an individual; MARK WATSON, an individual; BRENT BOHN, an individual; PHINEAS DEMINK, an individual; SARA DEMINK, an individual; NEIL RYPKEMA, an individual; SANDRA RYPKEMA, an individual; JOSHUA LINDSEY, an individual; DANIELLE LINDSEY, an individual; MATT WALKER, an individual; ASCENT SUMMIT RETREATS, LLC, a Utah limited liability corporation; JAMES REX, an individual; ANDREW K. SMITH, an individual; SAM TAGGART, an individual; ROSS MATSUURA, an individual; BRINLEY MATSUURA, | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF: (1) EXCHANGE ACT, SECTION 10B-5; (2) SALE OF UNQUALIFIED SECURITIES (CAL. CORP. CODE § 2503; (3) SALE OF SECURITY BASED ON MATERIAL MISSTATEMENT OR OMISSION OF MATERIAL FACT IN CONNECTION WITH THE SALE OF A SECURITY (CAL. CORP. CODE §§ 25401, 25501); (4) JOINT LIABILITY FOR VIOLATIONS OF CALIFORNIA CORPORATE SECURITIES LAW (CAL. CORP. CODE § 25504); (5) UTAH CODE SECTION 61-1-1 & SECTION 61-1-2; (6) BREACH OF FIDUCIARY DUTY, AND; (7) COMMON LAW FRAUD.**<br><br>**JURY DEMANDED** |

an individual; MICHAEL KIRKLEN, an individual; ANTHONY BLOOD, an individual; FLYNN PAULSON, an individual,

Plaintiffs,

v.

SOTHEBY'S INTERNATIONAL REALTY AFFILIATES, LLC; AND DOES 1 THROUGH 50 INCLUSIVE,

Defendants.

## INTRODUCTION

1. This case is brought on behalf of individuals who invested hundreds of thousands of dollars each to own condominium units in a Hilton hotel project, The Ascent at Park City ("Ascent"), that was marketed and presented to them by Sotheby's as an investment opportunity, wherein profits would be generated by a common enterprise: vacation rentals of said units under Hilton's Tapestry Collection brand.

2. Sotheby's took full advantage of the Hilton association to market the Ascent project as a safe long-term investment, in which personal use of a condominium unit was besides the point. Sotheby's plastered "THE ASCENT PARK CITY, TAPESTRY COLLECTION BY HILTON" wherever it could in its advertising materials and described the Ascent as "our slope-side all-suite hotel that is adjacent to Canyons Golf Course." In its sales pitch to each Plaintiff, Sotheby's presented a rental management program operated by a Hilton franchisee with "over 50 years of hotel and hospitality management experience" through which Plaintiffs' units would be marketed and used by Hilton as vacation rental accommodations. In other words, Sotheby's induced Plaintiffs' reasonable expectation of profits through the efforts of others.

3. However, as Plaintiffs have learned from their own investigation following an exposé by the Salt Lake Tribune, Sotheby's failed to disclose material facts that would have caused Plaintiffs not to invest or to attempt divestiture, in violation of state and federal securities laws. Sotheby's failure to disclose such facts also comprise violations of common law fraud and of fiduciary duties in their capacity as the designated listing agent for Ascent on which Plaintiffs relied.

4. The most fundamental undisclosed material fact is the initial developer consortium's failure to secure adequate funding to complete the project, let alone justify beginning construction thereof. The initial developer consortium, led by Utah corporation T S 1, LLC, and its principals Darwin Fielding and Scott Smithson, should not have solicited payments from investors throughout 2021 and 2022 given their inability to complete the project.

5. Sotheby's also failed to disclose the indebtedness of the second developer consortium led by Wolfgramm Capital and its principal Phil Wolfgramm that purchased the half-finished Ascent from T S 1, LLC, in late 2022. Wolfgramm Capital took on at least $10 million in additional loans and even raised $12m in capital from 38 individual investors in 2024, per a Regulation D filing with the SEC. Yet, Wolfgramm could not even pay Ascent's property taxes and in August 2026, Ascent was foreclosed upon by the project's primary lender.

6. To this day, Ascent remains unfinished. A Utah state court lawsuit by a small group of individual investors failed to prevent the foreclosure sale, confirming their worst fears: Their interests in the Ascent project have been wiped out.

7. The total amount lost by Plaintiffs due to Sotheby's inducement to invest in Ascent for the purpose of realizing profits through the rental of their Hilton-managed condominium-hotel ("condotel") units exceeds $7.5 million.

/ / /

/ / /

## JURISDICTION AND VENUE

8. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. The Plaintiffs and Defendants are citizens of different states. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10. The acts and omissions complained of in this action took place both in Park City, Utah and wherever Plaintiffs reside, as Plaintiffs interacted with Defendant both directly and through local agents. Venue is therefore proper pursuant to 28 U.S.C. § 1391 because the acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

## PARTIES AND PLAYERS

11. The Ascent Park City ("Ascent") 120-unit condominium-hotel ("condotel") project, still unfinished and recently foreclosed upon, was marketed by Defendant as a safe long-term investment, crystallized by its well-publicized association with the Tapestry Collection brand of Hilton International Holdings LLC, a Delaware limited liability company.

12. Defendant Sotheby's International Realty ("Sotheby's") describes itself as "the only truly global real estate brand, with a global network of residential brokerage companies." Sotheby's was the designated listing agent for Ascent, as disclosed in the condominium purchase contract each Plaintiff signed with the initial developer.

13. From the project's inception to September 2021, T S 1, LLC ("TS1"), was the original issuer and developer of Ascent, located at 4080 N. Cooper Lane, Park City, Utah 84098. TS1 is an active Domestic Limited Liability Company organized under the laws of the State of Utah. The business was officially filed and registered on November 22, 2016, with the Utah Department of Commerce under Entity ID 10170573-0160.

14. Ascent PC Project LLC is the manager of TS1, while F2B, LLC is a member of TS1. Ascent PC Project LLC and F2B LLC are both located at 881 W. State Street, Pleasant Grove, Utah.

15. Darwin Fielding is the manager and member of both Ascent PC Project LLC and TS1. He resides at 559 E 75 North Lindon, Utah 84042, in Utah County. He is also a principal of TS1.

16. Scott Smithson is the principal of Qelo Capital and of TS1 also. He is a resident of Utah County.

17. On February 24, 2023, Wolfgramm Capital LLC ("Wolfgramm Capital"), through its subsidiary Beehive Hospitality Ascent PC, LLC ("Beehive"), became the successor issuer to TS1. Wolfgramm Capital is a Texas-based real estate investment firm; its address is 1410 E Winding Way Dr., Friendswood, Texas.

18. Wolfgramm Capital organized Ascent Park City Investors LLC, also located at 1410 E Winding Way Dr., Friendswood, Texas, to raise a second round of capital in 2024 for the ostensible purpose of completing the Ascent project.

19. On October 1, 2021, OKOA Capital LLC ("OKOA") made an initial loan of $20,000,000 to TS1 to pay for the construction of Ascent. On February 9, 2024, OKOA filed a trust deed in Ascent which disclosed Beehive's obligation to repay $30,000,000 to OKOA.

20. In August 2026, OKOA became the new owner of Ascent following a Utah court-ordered foreclosure auction. OKOA's winning bid was $24 million, according to a trustee's deed in Summit County records.

**Plaintiffs**

21. Plaintiff Lisa M. Conner is a resident of Los Angeles County, California. Following a sales pitch by Sotheby's, she made deposit payments to TS1 for a condominium unit at Ascent in 2021.

/ / /

22. Plaintiff Mychal Edelman is a resident of San Diego County, California, while his brother Bryan Edelman is a resident of Utah. Following a sales pitch by Sotheby's, they made deposit payments to TS1 for a condominium unit at Ascent in 2021.

23. Plaintiff Jim Park is a resident of San Diego County, California. Following a sales pitch by Sotheby's, he made deposit payments to TS1 for a condominium unit at Ascent in 2021.

24. Plaintiff Anthony Kumar is an Arizona resident. Following a sales pitch by Sotheby's, he made deposit payments to TS1 for a condominium unit at Ascent in 2021.

25. Plaintiffs Mukesh Gopalakrishnan and Darshini Naga are Arizona residents. Following a sales pitch by Sotheby's, they made deposit payments to TS1 for a condominium unit at Ascent in 2021.

26. Plaintiff Thomas Waggoner is an Arizona resident. Following a sales pitch by Sotheby's, he made deposit payments to TS1 for two condominium units at Ascent in 2021.

27. Plaintiff Ajani Hunt and Diana Ordonez are Nevada residents. Following a sales pitch by Sotheby's, they made deposit payments to TS1 for two condominium units at Ascent in 2021.

28. Plaintiff Mark Watson is a Nevada resident. Following a sales pitch by Sotheby's, he made deposit payments to TS1 for a condominium unit at Ascent in 2021.

29. Plaintiff Brent Bohn is a Nevada resident. Following a sales pitch by Sotheby's, he made deposit payments to TS1 for a condominium unit at Ascent in 2021.

30. Plaintiffs Phineas and Sara DeMink are New York residents. Following a sales pitch by Sotheby's, they made deposit payments to TS1 for three condominium units at Ascent in 2021.

31. Plaintiffs Neil and Sandra Rypkema are New York residents. Following a sales pitch by Sotheby's, they made deposit payments to TS1 for a condominium unit at Ascent in 2021.

32. Plaintiffs Joshua and Danielle Lindsey are Utah residents. Following a sales pitch by Sotheby's, they made deposit payments to TS1 for a condominium unit at Ascent in 2021.

33. Matt Walker is a Utah resident. Following a sales pitch by Sotheby's, he made deposit payments to TS1 for a condominium unit at Ascent in 2021.

34. In 2023, Walker notified Beehive the owner of his unit was changed to a corporate entity he formed, Ascent Summit Retreats, LLC.

35. James Rex is a Utah resident. Following a sales pitch by Sotheby's, he made deposit payments to TS1 for two condominium units at Ascent in 2021.

36. Andrew K. Smith is a Utah resident. Following a sales pitch by Sotheby's, he made deposit payments to TS1 for a condominium unit at Ascent in 2021.

37. Sam Taggart is a Utah resident. Following a sales pitch by Sotheby's, he made deposit payments to TS1 for a condominium unit at Ascent in 2021.

38. Plaintiffs Ross and Brinley Matsuura are Utah residents. Following a sales pitch by Sotheby's, they made deposit payments to TS1 for a condominium unit at Ascent in 2021.

39. Michael Kirklen is a Utah resident. Following a sales pitch by Sotheby's, he made deposit payments to TS1 for a condominium unit at Ascent in 2021.

40. Anthony Blood is a Illinois resident. Following a sales pitch by Sotheby's, he made deposit payments to TS1 for a condominium unit at Ascent in 2021.

41. Flynn Paulson is a resident of San Juan, Puerto Rico. Following a sales pitch by Sotheby's, he made deposit payments to TS1 for a condominium unit at

Ascent in 2021.

42. Plaintiffs are informed and believe, and thereupon allege, that at all times relevant and mentioned herein, Defendants and DOES 1 through 50, inclusive, and each of them, were the agents, servants, employees, independent contractors, co-conspirators, retailers, distributors, wholesalers, management companies, subsidiaries and/or joint ventures of the remaining Defendants, and each of them, and were at all times material hereto acting within the authorized course, scope and purpose of said agency and employment, and/or that all of said acts were subsequently performed with the knowledge, acquiescence, ratification and consent of the respective principals, and the benefits thereof accepted by said principals.

43. Plaintiffs are unaware of the true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 50, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to show the true names and capacities of such Defendants when the same has been ascertained.

44. Plaintiffs are informed and believe and, on that basis, allege that at all times mentioned herein, each of the DOE Defendants was and now is the alter ego, agent, servant, employee, and representative of each of the remaining Defendants, and, in doing the things hereinafter alleged, was acting within the scope of his/her or its authority as such an agent, servant, employee, representative and alter ego, with the knowledge, permission, consent and ratification of the remaining Defendants.

45. DOE Defendants 1 through 10 are parties on whose behalf Sotheby’s induced Plaintiffs to invest in Ascent and said parties’ controlled entities who knowingly and intentionally participated in the fraud, violations of federal and state securities laws, and breaches of fiduciary duties.

/ / /

46. DOE Defendants 11 through 20 are lenders, and their affiliates who unlawfully and fraudulently secured debt by trust deeds on Plaintiffs' Ascent investment positions when DOE Defendants 11 through 20 knew DOE Defendants 1 through 10 had fraudulently incurred the debt.

## CONTEXT IN WHICH SECURITIES AND COMMON LAW VIOLATIONS OCCURRED

47. This action seeks recovery of damages incurred by Plaintiff purchasers of investment contracts they purchased in connection with the failed Ascent project.

48. The project's public face is a Hilton-managed Park City condotel ready to start operations in October 2027, as shown here:





# CANYONS VILLAGE SLOPE-SIDE ACCESS

120 Rooms | 4 Floors | 1 Restaurant

Nestled in Canyons Village, our slope-side all-suite hotel is adjacent to Canyons Golf Course and has direct access to Park City Mountain with the Frostwood Gondola. Enjoy our restaurant and bar, outdoor pool with poolside service, and fitness center. Just five minutes from Historic Main Street Park City, enjoy an elevated gateway to year-round mountain adventures.



# FROSTWOOD GONDOLA

We're steps from the Frostwood Gondola, providing slope-side access to the largest ski resort in the United States. Ski Valet will store your alpine gear during your stay.



## CANYONS GOLF PARK CITY

The Ascent Park City sits right off the 11th green of the Canyons Golf course. In the east slope of the Wasatch Mountains, Canyons Golf offers unparalleled views with challenging and enjoyable play.

49. Hilton represents that its Tapestry Collection is a collection of independent boutique hotels, "each rich in cultural charm and deeply connected to its destination." The unique boutique hotel experience, operated by one of the most successful hotelier companies in the world, is exactly what Sotheby's capitalized upon to induce Plaintiff's purchase of their investment units in Ascent.

50. Indeed, Sotheby's advertising for the Ascent likewise emphasized the vacation lifestyle that Hilton would market to future hotel guests on Ascent investors' behalf:







TAPESTRY COLLECTION BY HILTON

Hilton HONORS

## Global strength
## Local personality

The Ascent Park City is proud to be part of Tapestry Collection by Hilton. Proud and fiercely independent, Tapestry Collection combines unapologetic originality and authentic hospitality with a lasting commitment to the global community.

Hilton is the most recognized name in the hospitality industry. Travelers all over the world have been saying "Take me to the Hilton" for almost a century. And because of their innovative approach to products, amenities and customer service, Hilton continues to be synonymous with rejuvenating retreats around the globe.

THE BIGGEST BRAND IN DESTINATIONS HAS YOUR BACK



OWN A MINDFUL MODERN LUXURY ESCAPE
IN THE HEART OF THE CANYONS AT PARK CITY MOUNTAIN
120 FULLY FURNISHED SKI-IN/SKI-OUT RESIDENCES

51. The foregoing "THE ASCENT PARK CITY, TAPESTRY COLLECTION BY HILTON"-branded brochure in which Sotheby's promised Plaintiffs "THE BIGGEST BRAND IN DESTINATIONS HAS YOUR BACK" is the version of Ascent which Defendant Sotheby's used to induce Plaintiffs to purchase what was little more than investment contracts issued to them to bankroll part of the development costs of an insufficiently capitalized project.

52. In other words, Sotheby's emphasized the project was already a part of the Hilton family of hotels, in the specialty Tapestry Collection portfolio of one of the most successful hotel brands in the world. Plaintiffs saw the "TAPESTRY COLLECTION BY HILTON" branding as a mark of reliability; Sotheby's exploited that to induce Plaintiffs to sign on the dotted line.

53. Ascent's units were therefore marketed as residences in name only and indeed, Plaintiffs did not expect to occupy them for domiciliary purposes. Sotheby's sales pitches to each Plaintiff continuously insinuated (and as Plaintiffs recall, even outright stated) that purchase of a condominium unit at Ascent would

be a safe investment opportunity on a perfectly-located vacation rental property available at a special early-bird discounted rate.

54. Plaintiffs are aware of at least two such marketing ploys by Sotheby's to attract prospective investors to the undercapitalized Ascent project on such pretenses: (1) A video published by the Sotheby's sales agent identified in the purchase agreements with TS1, and (2) an article published by Smithson via his motorsports team, touting his advertisement of the Ascent project on his car livery, in which said Sotheby's sales agent is quoted.[1]

55. The sales agent's video from 2021, when Plaintiffs purchased their investment units, is quite revealing. Qelo Capital and TS1 principal Scott Smithson spoke first, pointing out "we are standing across from the gondola and direct access to skiing and the Canyon Ski Resort, just an amazing place… we're right next to a golf course, as well."

56. Darwin Fielding spoke next, discussing the numerous ways the project would "new, innovative ways to save money" without compromising "the integrity of the design." Smithson spoke again, this time emphasizing "the relationship with Hilton" and his choice of hotel manager based upon the fact that they "[brought] in Hilton." One of the scenes from the video even showed the Sotheby's sales agent wearing a hard hat and wielding a shovel alongside Fielding and Smithson.

57. On August 6, 2021, the Sotheby's sales agent and Smithson caused an press release to be issued, declaring Smithson's professional motorsports team would adopt the Ascent project as its primary sponsor alongside Smithson's Qelo Capital. On his car, the Ascent logo was emblazoned front and center:

[1] https://atlspeedwerks.com/the-ascent-park-city-becomes-primary-partner-on-atlanta-speedwerks-imsa-honda-civic-tcr-driven-by-scott-smithson-and-ryan-eversley/




58. The Sotheby's sales agent was quoted therein as follows: "I've known since day one that The Ascent at Park City would be one of the Mountain West's most sought-after condo-hotels… We'll be sharing this exceptional real estate offering with a new captive audience that would enjoy a break from the speed of the race track for a relaxing getaway and investment in the mountains." Plaintiffs, unfortunately, did invest.

59. Sotheby's, as the designated listing agent for Ascent on behalf of the project's initial developers, should have been aware the Ascent project was not yet sufficiently capitalized for it to be making any such representations. At an absolute minimum, Sotheby's needed to disclose such facts to Plaintiffs.

60. Indeed, the real Ascent project behind Sotheby's facade was detailed in a series of exposés by the Salt Lake Tribune from March 2026 to the present.

61. To summarize: From March to July 2026, the Salt Lake Tribune revealed Summit County Treasurer records showed the developers and agents behind Ascent owed more than $191,000 in unpaid property taxes, interest, and penalties. By that point, Wolfgramm was also sued by its contractors and vendors for unpaid work. For instance, Rock Construction placed a construction lien to recover $310,000 for concrete work, while Quality Fire Protection, placed a lien to recover $104,000. The Salt Lake Tribune reported the total amount of unpaid

contractor bills exceeded $14 million.

62. On July 22, 2026, the Salt Lake Tribune reported OKOA Capital used a $30,000,000 loan to developer Wolfgramm Capital to cause a foreclosure sale of Ascent with the intent of eliminating a portion of plaintiffs' property interest in Ascent, thereby changing its role from senior lender to Ascent developer.

63. By August 10, 2026, the Salt Lake Tribune reported OKOA became the new owners of Ascent after winning the foreclosure sale for $24 million, the amount of outstanding debt owed by Wolfgramm Capital through its corporate instrumentality Beehive.

64. The grisly events detailed by the Salt Lake Tribune are explained by certain filings made by corporate entities TS1, Wolfgramm Capital, and OKOA Capital with Summit County, where Park City is located.

65. On October 1, 2021, a deed of trust was filed in favor of OKOA to secure a $20,000,000 construction loan from OKOA to TS1 and Qelo Development LLC ("Qelo"). TS1 led the first developer consortium responsible for completing Ascent and was led by Darwin L. Fielding. Qelo, led by TS1 co-principal Scott Smithson, was responsible for Hilton's association with Ascent and for the contractors hired to build Ascent.

66. TS1 and its two layers of associated corporate entities, Ascent PC Project LLC and F2B LLC, appear to be little more than a corporate facade for Fielding's and Smithson's interest in Ascent. Indeed, both Ascent PC Project LLC and F2B LLC are registered at 881 W. State Street, Pleasant Grove, Utah, a UPS private post box shown here:




881 W State St

67. On February 9, 2024, a collateral assignment of declarant rights was filed in favor of OKOA to secure a $30,000,000 construction loan from OKOA to Beehive, the corporate instrumentality of second developer consortium leader Wolfgramm Capital. The $30,000,000 loan was also secured by the 2021 OKOA-favored deed of trust filed by TS1. Taking these documents at face value, it appears OKOA loaned the Ascent developers a total of at least $50 million (though OKOA claims on its website it loaned $45 million instead).

68. Wolfgramm and Beehive were led by Phil Wolfgramm. The Wolfgramm consortium purchased Ascent from TS1 on December 12, 2022. A deed of trust of that date reveals the purchase price was a paltry $2,550,000.

69. OKOA is a real estate investment group based out of Park City that frequently makes loans for construction projects collateralized by real estate. OKOA boasts several luxury resorts in its portfolio, including the Waldorf Astoria in Park City formerly owned by Wolfgramm. OKOA is led by Jason Meyer and Ty Corbridge.

70. Fielding, Smithson, Wolfgramm, and Corbridge are depicted below in order, from left to right:







71. The above-described loans, deeds, and assignments of rights are emblematic of Ascent's continuous capitalization problems that caused original developer TS1 to sell its interest in Ascent for a pittance and thereafter caused second developer Wolfgramm's interest in Ascent to be foreclosed upon by OKOA.

72. OKOA is not an innocent party to Wolfgramm's well-documented unraveling. OKOA increased the borrower's debt due by including the amount of the loan, unpaid interest, late fees, attorney fees, foreclosure costs, and anything the lender paid on the borrower's behalf.

**DISCOVERY OF CLAIMS AND DEFENDANTS' ACTIVE CONCEALMENT OF CLAIMS**

73. Defendants did not suspect defendants' unlawful conduct until June 2026, when plaintiffs discovered that OKOA effectively put Plaintiffs' Ascent condo-hotel units up for sale at a public auction by initiating a foreclosure sale on the entire property.

74. With the intent or effect of inducing plaintiffs to not assert their legal claims alleged in this operative complaint, Sotheby's (through its own agent's channel and those of TS1's affiliated entities) issued dozens of YouTube videos illustrating construction progress at Ascent with the intent of inducing Plaintiffs to believe the condotel project would shortly be producing profit.

75. For instance, Sotheby's arranged for construction manager SJ Company to issue a total of *thirty-seven* (37) videos over the course of the project's tortured construction timeline, as follows:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /


The Ascent Park City
SJ Company - 1 / 37
2 City | Progress for...
SJ Company
1:01
3 | The Ascent Park City | Progress for...
SJ Company
1:01
4 | The Ascent Park City | Progress for...
SJ Company
1:15
5 | The Ascent Park City | Progress for...
SJ Company
0:53
6 | The Ascent Park City | Progress for...
SJ Company
1:01
7 The Ascent June 2023 Progress...
SJ Company
1:17
18 | The Ascent Park City | Progress for...
SJ Company
1:17
19 | The Ascent Park City | Progress for...
SJ Company
1:17
20 | The Ascent | Concrete Pour...
SJ Company
2:10
21 | The Ascent Park City | Progress for...
SJ Company
1:16
22 | The Ascent Park City | Progress for...
SJ Company
1:15


The Ascent Park City
SJ Company - 1 / 37
8 | The Ascent Park City | Progress for...
SJ Company
1:01
9 | The Ascent Park City | Progress for...
SJ Company
0:54
10 | The Ascent Park City | Progress for...
SJ Company
1:43
11 | The Ascent Park City | Progress for...
SJ Company
1:15
12 | The Ascent Park City | Progress for...
SJ Company
1:10
13 | The Ascent | Concrete Pour...
SJ Company
1:16
14 | The Ascent Park City | Progress for...
SJ Company
1:15
15 | The Ascent Park City | Progress for...
SJ Company
1:19




**FIRST CLAIM FOR RELIEF**
**Violations of Exchange Act**
**[15 U.S.C.§ 78j(b); 17 C.F.R. § 240.l0b-5]**
**(Against All Defendants)**

76. Plaintiffs reallege and incorporate by reference each and every allegation in the foregoing paragraphs, inclusive, as if they were fully set forth herein.

77. Defendants, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, knowingly or recklessly have (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary

in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

78. Defendant marketed condominium unit purchases in Ascent as an early-bird investment opportunity; Plaintiffs did not intend to inhabit their units for anything other than occasional, token amounts of time. Plaintiffs invested with the expectation of making long-term profit by renting them out via Hilton's Tapestry Collection operation.

79. Plaintiffs would have received returns and profits from not from their own effort, but through the efforts of others, *i.e.* a rental management program operated by Hilton that would have been offered by the developer.

80. A contract to purchase an interest in real property whose profitability depends on the efforts of others is in fact an investment contract and not merely a garden variety purchase of real property. The U.S. Supreme Court rule is long-established: An investment contract means "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." (*SEC v. W.J. Howey Co.* (1946) 328 U.S. 293, 298-99).

81. All three elements exist here: (1) Plaintiffs invested their money into (2) the common enterprise of developing real property in the form of a 120-unit condo-hotel project in which they would own units, and (3) the profits of said enterprise would come solely from the efforts of the developer's Hilton-operated rental management program. So, the profit from the enterprise depended entirely on defendants' ability to complete development of the project and successfully use it as a hotel. (*See generally SEC v. Barry* (2025) 146 F.4th 1242, 1251-52).

82. Defendant marketed their securities disguised as condo-hotel units despite knowing the project was woefully undercapitalized and chronically behind

schedule. The project required at least $45 million in loans to be taken out, only for property taxes and contractors to go unpaid and for the project to be foreclosed upon.

83. By reason of the foregoing, Defendants violated and, unless enjoined, will again violate Exchange Act Section l0(b) [15 U.S.C. § 78j(b)] and Rule l0b-5 thereunder [17 C.F.R. § 240.10b-5].

**SECOND CLAIM FOR RELIEF**
**Control Person Liability**
**15 U.S.C § 78t**
**(Against DOE Defendants)**

84. Plaintiffs reallege and incorporate by reference each and every allegation in the foregoing paragraphs, inclusive, as if they were fully set forth herein.

85. Upon information and belief, DOE Defendants controlled Defendant Sotheby's and the other DOE Defendants when they violated Section 10 of the Exchange Act and Rule 10(b) 5, as alleged herein and thereby have joint and several liability.

**THIRD CLAIM FOR RELIEF**
**Cal. Corp. Code §25503:**
**Sale of Unqualified Securities**
**(Against All Defendants)**

86. Plaintiffs restate each allegation above and incorporates them as if set forth herein.

87. Defendant issued, offered, and sold investment contracts disguised as condominium unit purchases in the undercapitalized Ascent project to California Plaintiffs and other investors without qualifying the securities in violation of § 25503.

88. Defendants thereby failed to fulfill any of the requirements for an offering of securities under California law: No filings were made with the State of California's DFPI and no disclosures relevant to the sale of a security were made to

Plaintiff or any other investor.

89. California Plaintiffs, as a direct and proximate result of defendants' sale of unqualified securities, have suffered damages in the amount of their initial investments.

90. Plaintiffs seek rescission of the investment contract, damages incurred and restitution of the funds invested together with interest thereon, and reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
**Cal. Corp. Code §§ 25401 and 25501:**
**Sale of Securities via Untrue Statements or Omissions of Material Fact**
**(Against All Defendants)**

91. Plaintiff restates each allegation above and incorporates them as if set forth herein.

92. Defendants issued, offered, and sold the securities disguised as condo-hotel unit purchases to Plaintiffs based on the material omissions and misstatements of facts as alleged above in violation of Cal. Corp. Code §§ 25401 and 25501.

93. California Plaintiffs, as a direct and proximate result of defendants' sale of unqualified securities, have suffered damages in the amount of their initial investments.

94. Plaintiffs seek rescission of the investment contract, damages incurred and restitution of the funds invested together with interest thereon, and reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**Cal. Corp. Code § 25504.1**
**Joint and Several Liability for Securities Law Violations**
**(Against DOE Defendants)**

95. Plaintiff restates each allegation above and incorporates them as if set forth herein.

96. DOE Defendants are jointly and severally liable to the extent they materially assisted any of the above-named corporate defendants in committing the

above-described violations of Cal. Corp. Code § 25401 by selling unqualified securities by means of untrue statements and omissions of material fact.

97. California Plaintiffs, as a direct and proximate result of defendants' sale of unqualified securities, have suffered damages in the amount of their initial investments.

98. Plaintiffs seek rescission of the investment contract, damages incurred and restitution of the funds invested together with interest thereon, and reasonable attorneys' fees.

**SIXTH CLAIM FOR RELIEF**
**Violation of Utah Code Section 61-1-1; Section 61–1–22**
**(Against All Defendants)**

99. Plaintiffs reallege and incorporate by reference each and every allegation in the foregoing paragraphs, inclusive, as if they were fully set forth herein.

100. Under Utah Code Section 61–1–22(1)(b), Plaintiffs are purchasers of securities Defendants sold to them in violation of Section 61-1-1; Plaintiffs thereby seek to recover under Section 61–1–22 recover the consideration paid for the security, together with interest, costs, and attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**
**Violation of Utah Code Ann. § 61–1–22(4)(a)**
**(Against DOE Defendants)**

101. Plaintiffs reallege and incorporate by reference each and every allegation in the foregoing paragraphs, inclusive, as if they were fully set forth herein.

102. DOE Defendants directly or indirectly control a seller of securities that is liable under Section 61-1-1 and Section 61–1–22.

103. DOE Defendants are managers, partner, officer, or director of such, are persons occupying a similar status or performing similar function or are employees of such a seller or buyer who materially aided in the sale or purchase of such securities. They are therefore liable jointly and severally with and to the same

extent as the seller.

**EIGHTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(Against All Defendants)**

104. Plaintiffs reallege and incorporate by reference each and every allegation in the foregoing paragraphs, inclusive, as if they were fully set forth herein.

105. Defendant Sotheby's, in addition to other DOE Defendants owed Plaintiffs a fiduciary duty by acting as designated listing agents for Ascent, on whose representations Plaintiffs relied in investing therein.

106. DOE Defendants also owed Plaintiff a fiduciary duty in their capacity as managers of the investments Plaintiffs made in the Ascent project.

107. Defendants breached their fiduciary duties by failing to disclose to Plaintiffs critical information relevant to their investments, including (but not limited to) the financial status of the projects in which Plaintiffs invested.

**NINTH CLAIM FOR RELIEF**
**Common Law Fraud**
**(Against All Defendants)**

108. Plaintiffs reallege and incorporate by reference each and every allegation in the foregoing paragraphs, inclusive, as if they were fully set forth herein.

109. Defendants knowingly or negligently made material misstatements of material facts and omitted the facts needed to those statements not misleading, and Plaintiffs reasonably relied on these misrepresentations.

110. Plaintiffs have thereby suffered damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1. Damages according to proof at trial together with interest at the legal rate;

2. Reasonable attorney's fees and costs;

3. For all other relief the Court deems proper.

4. For any other further relief the Court deems just and proper.

AGUIRRE & SEVERSON, LLP

Dated: October 9, 2026

*/s/ Maria C. Severson*
Maria C. Severson, Esq.,
Attorneys for Plaintiffs